WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Becky Lee Cook,<br><br>                    Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Acting Commissioner of the Social Security Administration,<br><br>                    Defendant. | No. CV-15-08158-PCT-ESW<br><br>**ORDER** |

Pending before the Court is Becky Lee Cook's ("Plaintiff") appeal of the Social Security Administration's ("Social Security") denial of her applications for disability insurance benefits and supplemental security income. The Court has jurisdiction to decide Plaintiff's appeal pursuant to 42 U.S.C. §§ 405(g), 1383(c). Under 42 U.S.C. § 405(g), the Court has the power to enter, based upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing. Both parties have consented to the exercise of U.S. Magistrate Judge jurisdiction. (Doc. 20).

After reviewing the Administrative Record ("A.R.") and the parties' briefing (Docs. 25, 28, 31), the Court finds that the Administrative Law Judge's ("ALJ") decision contains harmful legal error. For the reasons explained in Section II below, the decision

is reversed and the case is remanded to the Commissioner of Social Security for further proceedings.

## I. LEGAL STANDARDS

### A. Disability Analysis: Five-Step Evaluation

The Social Security Act (the "Act") provides for disability insurance benefits to those who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Act also provides for supplemental security income to certain individuals who are aged 65 or older, blind, or disabled and have limited income. 42 U.S.C. § 1382. To be eligible for benefits based on an alleged disability, the claimant must show that he or she suffers from a medically determinable physical or mental impairment that prohibits him or her from engaging in any substantial gainful activity. 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(A)(3)(A). The claimant must also show that the impairment is expected to cause death or last for a continuous period of at least 12 months. *Id.*

To decide if a claimant is entitled to Social Security benefits, an ALJ conducts an analysis consisting of five questions, which are considered in sequential steps. 20 C.F.R. §§ 404.1520(a), 416.920(a). The claimant has the burden of proof regarding the first four steps:[1]

> **Step One**: Is the claimant engaged in "substantial gainful activity"? If so, the analysis ends and disability benefits are denied. Otherwise, the ALJ proceeds to step two.
>
> **Step Two:** Does the claimant have a medically severe impairment or combination of impairments? A severe impairment is one which significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied at this step. Otherwise, the ALJ proceeds to step three.

---

[1] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

> **Step Three:** Is the impairment equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity? 20 C.F.R. §§ 404.1520(d), 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step of the analysis.
>
> **Step Four:** Does the impairment prevent the claimant from performing work which the claimant performed in the past? If not, the claimant is "not disabled" and disability benefits are denied without continuing the analysis. 20 C.F.R. §§ 404.1520(f), 416.920(f). Otherwise, the ALJ proceeds to the last step.

If the analysis proceeds to the final question, the burden of proof shifts to the Commissioner:[2]

> **Step Five:** Can the claimant perform other work in the national economy in light of his or her age, education, and work experience? The claimant is entitled to disability benefits only if he or she is unable to perform other work. 20 C.F.R. §§ 404.1520(g), 416.920(g). Social Security is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the claimant's residual functional capacity, age, education, and work experience. *Id.*

**B. Standard of Review Applicable to ALJ's Determination**

The Court must affirm an ALJ's decision if it is supported by substantial evidence and is based on correct legal standards. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990). "Substantial evidence" is less than a preponderance, but more than a "mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)).

---

[2] *Parra*, 481 F.3d at 746.

It is relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*.

In determining whether substantial evidence supports the ALJ's decision, the Court considers the record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusions. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993). If there is sufficient evidence to support the ALJ's determination, the Court cannot substitute its own determination. *See Morgan v. Comm'r of the Social Sec. Admin*., 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ, not the Court, is responsible for resolving conflicts and ambiguities in the evidence and determining credibility. *Magallanes*, 881 F.2d at 750; *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

Finally, the Court considers the harmless error doctrine when reviewing an ALJ's decision. An ALJ's decision need not be remanded or reversed if it is clear from the record that the error is "inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008) (citations omitted); *Molina*, 674 F.3d at 1115 (an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error "does not negate the validity of the ALJ's ultimate conclusion") (citations omitted).

## II.  PLAINTIFF'S APPEAL

### A.  Procedural Background

Plaintiff, who was born in 1964, has been employed as a caregiver and fast food worker. (A.R. 66, 74). In 2011, Plaintiff filed applications for disability insurance benefits and supplemental security income. (A.R. 223-39). Plaintiff's applications alleged that on October 23, 2011, she became unable to work due to the following conditions: chronic obstructive pulmonary disease ("COPD"), "oxygen dependent," back pain, sleep apnea, high blood pressure, depression, anxiety, asthma, bronchitis, and

enlarged heart. (A.R. 74, 88). Social Security denied the applications in May 2012. (A.R. 136-43). In November 2012, upon Plaintiff's request for reconsideration, Social Security affirmed the denial of benefits. (A.R. 146-52). Plaintiff sought further review by an ALJ, who conducted a hearing in January 2014. (A.R. 28-73). In his February 21, 2014 decision, the ALJ found that Plaintiff has not been under a disability from October 23, 2011 through the date of the decision. (A.R. 13-22).

Plaintiff appealed the ALJ's ruling. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Social Security Commissioner. (A.R. 1-4). On August 27, 2015, Plaintiff filed a Complaint (Doc. 1) pursuant to 42 U.S.C. § 405(g) requesting judicial review and reversal of the ALJ's decision.

**B. The ALJ's Application of the Five-Step Disability Analysis**

**1. Step One: Engagement in "Substantial Gainful Activity"**

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since October 23, 2011, the alleged onset date. (A.R. 15). Neither party disputes this determination.

**2. Step Two: Presence of Medically Severe Impairment/Combination of Impairments**

The ALJ found that Plaintiff has the following severe impairments: (i) COPD; (ii) sleep apnea; (iii) hypertension with cardiomegaly; (iv) asthma; (v) osteoporosis; (vi) migraines; (vii) osteoarthritis; and (viii) obesity. (A.R. 15). Plaintiff argues that the ALJ erred by not including Plaintiff's alleged mental health issues and back pain in the list of severe impairments.[3] (Doc. 25 at 19-20).

---

[3] In her brief, Plaintiff also argues that the ALJ erred by failing to include headaches in the list of severe impairments. (Doc. 25 at 19-20). However, as Defendant's Response observes (Doc. 28 at 11), the ALJ included migraines in the list of severe impairments. Plaintiff does not maintain the challenge in her Reply (Doc. 31 at 6-7). The Court deems the issue moot.

### 3. Step Three: Presence of Listed Impairment(s)

The ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Social Security regulations. (A.R. 17). Neither party disputes the ALJ's determination at this step.

### 4. Step Four: Capacity to Perform Past Relevant Work

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except that:

> [Plaintiff] can never climb ladders, ropes, or scaffolds and she can occasionally climb ramps or stairs, balance, stoop, crouch, and kneel. She can never crawl and requires the use of supplemental oxygen. [Plaintiff] should avoid concentrated exposure to extreme temperatures, wetness, humidity, excessive vibration, irritants such [as] fumes, odors, dust, and gases, use of hazardous machinery and exposure to unprotected heights.

(A.R. 19). Based on Plaintiff's RFC, the ALJ determined that Plaintiff was unable to perform her past relevant work at Step Four. (A.R. 20-21). Plaintiff argues that the ALJ improperly weighed the evidence in assessing Plaintiff's RFC.

### 5. Step Five: Capacity to Perform Other Work

At the administrative hearing, a vocational expert ("VE") testified that based on Plaintiff's RFC, Plaintiff would be able to perform the requirements of representative occupations such as document preparer, call-out operator, and addresser. (A.R. 67-68). The ALJ found that the VE's testimony was consistent with the information in the Dictionary of Occupational Titles and that the jobs identified by the VE existed in significant numbers in the national economy. (A.R. 21-22). After considering the VE's testimony, Plaintiff's age, education, work experience, and RFC, the ALJ determined that Plaintiff can make a successful adjustment to other work and is therefore not disabled. (A.R. 22).

### C. Plaintiff's Challenge at Step Two: The ALJ's Exclusion of Plaintiff's Mental Health Issues and Back Pain in the List of Severe Impairments

"[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Id.* (quoting Social Security Ruling (SSR) 85–28). In making the RFC assessment, an "ALJ must consider all of a claimant's medical determinable impairments, including those that are not severe." *Ghanim v. Colvin*, 763 F.3d 1154, 1166 (9th Cir. 2014).

#### 1. Plaintiff's Alleged Back Pain

A claimant's own statement of symptoms alone is insufficient to establish a medically determinable impairment at Step Two of the disability analysis. *See* 20 C.F.R. §§ 404.1508, 416.908. The record must also include "signs—the results of 'medically acceptable clinical diagnostic techniques,' such as tests . . . ." *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005).

The ALJ found that Plaintiff's alleged back pain was not a medically determinable severe impairment because:

> an x-ray of [Plaintiff's] lumbar spine was normal (Ex. 9F/23). [Plaintiff] has received treatment in the form of pain medication, but has not received epidural injections or surgical intervention. There is no indication that [Plaintiff's] alleged back pain causes more than minimal limitations in [Plaintiff's] ability to perform work-related functions. Therefore, I find tha[t] [Plaintiff's] back pain is not a medically determinable severe impairment.

(A.R. 15-16).

While the ALJ correctly notes that an August 2012 x-ray of Plaintiff's spine did not show any significant abnormalities (A.R. 470), the ALJ's decision does not discuss other relevant evidence in the record. For instance, physical examinations revealed "decreased range of motion of L spine, paraspinal tenderness lower L spine and sacral

area . . . ." (A.R. 449, 481, 494, 504). Multiple records show that Plaintiff was diagnosed with chronic back pain. (A.R. 455, 487, 524). In addition, Nurse Practitioner ("NP") Daniel Knight opined that Plaintiff's chronic low back pain requires daily pain medications to function, and that the medications cause drowsiness and decrease Plaintiff's ability to concentrate. (A.R. 584). NP Knight also opined that Plaintiff had numerous physical limitations.[4] (A.R. 584-89). Even though NP Knight is not an acceptable medical source, he is an "other source." 20 CFR §§ 404.1513(d) and 416.913(d). Opinions from "other sources" are relevant to the Step Two determination and cannot be rejected without germane reasons. *See* SSR 06–3P, 2006 WL 2329939, at \*3 (Aug. 9, 2006) (stating that opinions from other sources such as nurse practitioners "are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file"); *see also Tobeler v. Colvin*, 749 F.3d 830, 834 (9th Cir. 2014) ("lay witness testimony *as to a claimant's symptoms or how an impairment affects ability to work* is competent evidence that *cannot be disregarded without comment*") (emphasis in original); *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

---

[4] NP Knight's July 26, 2016 assessment was co-signed by Angelica Macias, M.D. (A.R. 589). Citing to *Taylor v. Comm'r of Soc. Sec. Admin*, 659 F.3d 1228 (9th Cir. 2011) and *Gomez v. Chater*, 74 F.3d 967 (9th Cir. 1996), Plaintiff argues that "[t]o the extent FNP Knight was working closely with, and under the supervision of, Dr. Macias, his opinion is to be considered that of an 'acceptable medical source.'" (Doc. 25 at 17). However, it is unclear whether *Taylor* and *Gomez* remain good law. In *Molina*, 674 F.3d at 1112 n.3, the Ninth Circuit noted that the regulatory section relied on in *Gomez* has since been repealed. The repealed regulation (20 C.F.R. § 416.913(a)(6)) stated that a report of an interdisciplinary team that contains the evaluation and signature of an acceptable medical source is also considered acceptable medical evidence, which the *Gomez* court interpreted as including a NP-doctor team. The Ninth Circuit in *Molina*, however, did not address the "continued vitality" of *Gomez* because the NP at issue acted alone. *Molina*, 674 F.3d at 1112 n.3.
 Assuming arguendo that *Taylor* and *Gomez* remain good law, Defendants correctly observe (Doc. 28 at 6) that there is no evidence in the record showing that NP Knight worked closely under the supervision of Dr. Macias and was acting as an agent of Dr. Macias. *See Nichols v. Comm'r of Soc. Sec.*, 260 F.Supp.2d 1057, 1066-67 (D. Kan. 2003) (distinguishing *Gomez* where physician signed the report of a NP, but there was no evidence indicating that the NP was working closely under the physician's supervision, that the NP Stanford had consulted with the physician during the course of the claimant's treatment, and there was nothing in the record indicating that the claimant was ever seen or treated by the physician).

While an ALJ need not discuss all evidence, he or she must discuss why "significant probative evidence has been rejected." *See Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). The Court finds that Plaintiff's chronic back pain diagnosis, physical examinations showing decreased range of motion and tenderness in Plaintiff's back, and the opinions of NP Knight are significantly probative to the Step Two determination. The ALJ erred by disregarding this evidence without comment when finding that Plaintiff's low back pain is not a medically determinable severe impairment. *Smolen*, 80 F.3d at 1282 ("Without explanation, [ALJ] ignored medical evidence of Smolen's other impairments and thereby erred.").

For the above reasons, the ALJ has not provided sufficient reasons to support his conclusion that Plaintiff's alleged back pain is "not a medically determinable severe impairment."[5]

### 2. Plaintiff's Mental Health Impairments

For allegations regarding mental impairments, an ALJ must use the special review technique set forth in 20 C.F.R. § 404.1520a. After determining whether an applicant has a medically determinable mental impairment, the ALJ must rate the degree of functional limitation in four areas: (i) activities of daily living, (ii) social functioning, (iii) concentration, persistence or pace, and (iv) episodes of decompensation. *Id.* at § 404.1520a(c)(3). Next, the ALJ must determine the severity of the mental impairment. *Id.* at § 404.1520a(d). If the degree of limitation in the first three functional areas is "none" or "mild" and "none" in the fourth area, it is generally concluded that the impairment is not severe unless the evidence otherwise indicates that there is more than a minimal limitation in the ability to do basic work activities. *Id.* at § 404.1520a(d)(1).

The ALJ found that Plaintiff had medically determinable mental impairments of depression, anxiety, post-traumatic stress disorder ("PTSD"), and history of marijuana

---

[5] It is unclear from the ALJ's decision whether the ALJ concluded that (i) Plaintiff's alleged back pain was a medically determinable impairment, but was not a severe impairment or (ii) whether Plaintiff's alleged back pain was not a medically determinable impairment at all.

use. (A.R. 16). Applying the special review technique, the ALJ found that the mental impairments cause no more than "'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation which have been of extended duration in the fourth area" and are therefore non-severe. (A.R. 17). As detailed below, the Court finds that the ALJ has provided insufficient reasons for finding that Plaintiff's mental impairments are non-severe.

### i. Plaintiff's Limited Treatment History

In explaining why he found Plaintiff's mental impairments non-severe, the ALJ first stated that:

> [Plaintiff] alleged that her depression makes it difficult for her to talk to people and that [she] has panic attacks. She was not receiving any formal mental health treatment at the time of the hearing . . . . [Plaintiff] previously received counseling at North Country HealthCare-Flagstaff Behavioral Health, beginning in December of 2012 (Ex. 13F). However, she denied depression in October and December of 2013 (Ex. 17F/22, 28). The claimant's treatment history does not support a finding that she has a severe mental impairment.

(A.R. 16).

The fact that Plaintiff has had limited mental health treatment is not a sufficient sole reason to find that her mental impairments are not severe at Step Two. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) ("[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.") (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)); *see also Balladarez v. Colvin*, No. CV 13-9490-MAN, 2014 WL 7185342, at *6 (C.D. Cal. Dec. 16, 2014) ("the methods by which plaintiff treated, or failed to treat, his alleged mental impairments are not relevant to a determination of whether plaintiff has a 'medically determinable' mental impairment"). The record reflects that Plaintiff is on antidepressants, has consistently reported feeling depressed, and has exhibited a flat or depressed mood. (*See, e.g.*, A.R. 452, 473, 492, 502-04, 525, 530, 547, 557-58, 565-66, 596, 603). While the October and December 2013 medical records cited by the ALJ

indicate that Plaintiff did not have a depressed, anxious, or agitated mood or affect, "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

### ii. Examining Psychiatrist Dr. Aaron Goldman and Non-Examining Psychological Consultants

On April 2, 2012, consulting psychiatrist Aaron Goldman, M.D.[6] examined Plaintiff. (A.R. 418-23). Dr. Goldman diagnosed Plaintiff with PTSD and major depressive disorder, moderate, recurrent. (A.R. 420). Dr. Goldman indicated that Plaintiff's Global Assessment of Functioning ("GAF") is 42. (A.R. 421). Dr. Goldman stated that Plaintiff is able to understand and remember simple instructions, but "her depression makes it difficult to follow through detailed instructions and needs further treatment [for] her depression. She is currently interrupted with re-experiencing her trauma and this also needs to be addressed." (A.R. 422). Dr. Goldman also noted that Plaintiff's work attendance "might be problematic given the severity of her depression" and that Plaintiff's ability to maintain socially appropriate behavior could become difficult if she experienced panic symptoms or symptoms related to her trauma. (*Id.*). Finally, Dr. Goldman indicated that Plaintiff might find it difficult to adapt to changes in the work setting. (*Id.*).

Non-examining state agency psychological consultants found that Plaintiff did not have a severe mental impairment. (A.R. 104-35). The ALJ gave great weight to those opinions "because they are consistent with [Plaintiff's] limited treatment history." (A.R. 16). In contrast, the ALJ gave "partial weight" to Dr. Goldman's opinion because he "failed to consider [Plaintiff's] marijuana use, and his findings that the claimant had a

---

[6] The ALJ's decision erroneously states that Dr. Goldman is a Doctor of Psychology (Psy. D) rather than a Doctor of Medicine (MD).

GAF of 42 and significant social limitations are not consistent with [Plaintiff's] treatment history." (*Id.*). The ALJ's decision provides insufficient reasons for giving great weight to the non-examining consultants' opinions, but partial weight to Dr. Goldman's assessment.

First, the ALJ's failure to identify which portions of Dr. Goldman's assessment was given weight, and how much weight, deprives the Court of the opportunity to meaningfully review the ALJ's Step Two determination. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (a court "cannot substitute [the court's] conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions. Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence.") (quoting *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1103 (9th Cir. 2014)).

Second, as an examining physician, Dr. Goldman's opinions are entitled to greater weight than a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). And because Dr. Goldman specializes in psychiatry, his opinions regarding Plaintiff's mental health are entitled to greater weight than a non-specialist.[7] *See* 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5); *Smolen*, 80 F.3d at 1285. The ALJ's decision does not articulate with sufficient specificity the reasons for giving Dr. Goldman's opinions less weight than the non-examining consultants' opinions. It is unclear how Dr. Goldman's opinions are inconsistent with Plaintiff's treatment history. To the extent the ALJ's reasoning rests on the fact that Plaintiff has a limited mental health treatment history, the limited treatment is not a sufficient sole reason to discount Dr. Goldman's opinions. *Nguyen*, 100 F.3d at 1465 ("[I]t is common knowledge that depression is one of the most underreported illnesses in the country because those afflicted often do not recognize that their condition reflects a potentially serious mental illness. . . . Thus, the

---

[7] It is unclear from the record whether the non-examining consultants are specialists.

fact that claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis on which to conclude that [a examining psychologist's] assessment of claimant's condition is inaccurate.").

Finally, the ALJ's statement that Dr. Goldman failed to address Plaintiff's marijuana use conflicts with the ALJ's finding that Plaintiff's "substance abuse is not material" to the Step Two determination. (A.R. 16).

### iii.  Teresa Dunn, MSW, LCSW

From December 2012 to March 2013, Plaintiff received counseling from Teresa Dunn, MSW, LCSW. (A.R. 511-14). Ms. Dunn opined that Plaintiff had very poor memory and reasoning skills and would have serious limitations in the ability to understand, remember, and carry out complex, detailed, and simple job instructions. (A.R. 508-10). Ms. Dunn also opined that Plaintiff had serious social limitations and would have serious limitations in adjusting to a job. (*Id*.). Finally, Ms. Dunn opined that Plaintiff's impairments would cause Plaintiff to miss work more than three times a month. (A.R. 510).

The ALJ gave little weight to Ms. Dunn's opinion, stating that Ms. Dunn's treating relationship with Plaintiff was "only about three or four months, and her statement is not consistent with [Plaintiff's] treatment records. In addition, Ms. Dunn is not an acceptable medical source." (A.R. 16). The ALJ's decision does not explain why the ALJ concluded that Ms. Dunn's opinion is not consistent with Plaintiff's treatment records. Although Ms. Dunn's treatment notes are sparse, they do not contradict Ms. Dunn's assessment. For instance, notes from Plaintiff's first visit on December 2012 state that Plaintiff appears to be "ready and willing to address a long history of violence and probably PTSD." (A.R. 511). Notes from the second visit state that Plaintiff wants to try to deal with the "severe physical [and] sexual abuse she experienced as a child, which she feels she is still dealing with in her life now." (A.R. 512). Ms. Dunn's February 2013

notes state that Plaintiff has "numerous medical issues and depression." (A.R. 513).[8] The last treatment note states that Plaintiff "returns to address her depression and anxiety . . . ." (A.R. 514).

Lastly, the fact that Ms. Dunn is not an acceptable medical source is not a valid reason for discounting her opinion. As an "other source," Ms. Dunn's opinions must be considered and cannot be rejected without germane reasons. *See* 20 C.F.R. §§ 404.1513(d), 416.913(d); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). The Court finds that the ALJ failed to provide sufficient reasons for giving Ms. Dunn's opinions little weight at Step Two.

### D. The ALJ's Step Two Errors Require Remand for Further Proceedings

As mentioned previously, an ALJ must consider a claimant's limitations caused by his or her severe and non-severe impairments in combination when determining a claimant's RFC. 20 C.F.R. §§ 404.1520, 404.1529; §§ 416.920, 416.929; *see also Ghanim*, 763 F.3d at 1166. Here, the ALJ provided insufficient reasons for finding that Plaintiff's medically determinable mental impairments are non-severe. The ALJ's errors at Step Two are not harmless because the ALJ only considered Plaintiff's physical impairments in determining Plaintiff's RFC.[9]

"A district court may reverse the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing, but the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."

---

[8] This record also states "[a]pparently goal is to receive help with SSI application." Similarly, Ms. Dunn's last record states that Plaintiff's "main concern is getting financial relief [sic]" and "very disabled female looking for help to get into Social Security [disability system]." (A.R. 514). To the extent the ALJ finds these statements relevant to Plaintiff's claim, the Ninth Circuit has explained that "in the absence of other evidence to undermine the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it." *Reddick*, 157 F.3d at 726.

[9] The ALJ did not address Plaintiff's back pain when determining Plaintiff's RFC. However, as mentioned previously, it is unclear from the ALJ's decision whether the ALJ found that Plaintiff's back pain was a medically determinable impairment, but was non-severe, or was not a medically determinable impairment at all. If the ALJ finds on remand that the back pain is a medically determinable impairment, but is not severe, the ALJ shall consider the non-severe impairment when re-assessing Plaintiff's RFC.

- 14 -

*Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (citations and internal quotation marks omitted). A district court may remand directly for an award of benefits only when: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ failed to provide legally sufficient reasons for rejecting evidence; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. Even if these requirements are met, the court retains "flexibility" to remand "on an open record for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Dominguez*, 808 F.3d at 407-08.

It is appropriate to remand this matter to the Commissioner for further proceedings as there is conflicting evidence that must be reweighed and resolved by the ALJ. *See Treichler*, 775 F.3d at 1101 (remand for additional proceedings, rather than an award of benefits, is appropriate "[w]here there is conflicting evidence, and not all essential factual issues have been resolved . . ."). On remand, the ALJ should develop the record as necessary and reevaluate the evidence at Step Two, reassess and determine Plaintiff's RFC, and obtain additional VE testimony at Step Five, if appropriate. Because the ALJ's harmful error at Step Two requires remand, the Court does not address Plaintiff's challenges to the ALJ's RFC and Step Five determinations as those determinations may change on remand.

### III.  CONCLUSION

Based on the foregoing,

**IT IS ORDERED** reversing the decision of the Commissioner of Social Security and remanding for further administrative proceedings. The ALJ shall issue a new decision that is consistent with the applicable law as set forth in this Order. The ALJ, however, is not precluded from reopening the hearing to receive additional evidence if deemed appropriate. The Clerk of Court shall enter judgment accordingly.

Dated this 21st day of July, 2016.

_____
Eileen S. Willett
United States Magistrate Judge